IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| DANIEL M. CHAPUIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 3:15-cv-00038 |
| | ) | JUDGE CAMPBELL |
| BECTON DICKINSON AND COMPANY, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff's Complaint alleges discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.A. § 623. Now before the Court is Defendant's motion for summary judgment. Docket No. 29. For the reasons set forth herein, the Court will grant Defendant's motion.

**I.     FACTUAL BACKGROUND**

Plaintiff worked as a sales representative at Becton Dickinson and Company for over 18 years. When he started at the company, he was given a territory that was last, out of 105 territories in the company. Within two years, Plaintiff had improved the sales in that territory to the point that it was in the top ten or eleven territories in the company. The company gave Plaintiff a commemorative congratulatory plaque for that accomplishment. The following year, Defendant named Plaintiff regional salesperson of the year. Defendant promoted Plaintiff to a position responsible for training new sales associates. After approximately four years with Defendant, Plaintiff left to pursue more lucrative opportunities. Defendant recruited him back at a rate of pay that was almost 75% more than his base salary when he left. Approximately two years after he

returned to the company, Regional Manager Robert Schuchard became his direct supervisor. Defendant gave him responsibility for doing regional training and made him a key account representative, tasked with looking after larger accounts in the region. From Plaintiff's perspective, he was successful at his job, and Defendant moved him into positions of increasing responsibility and specialization.

Defendant has a different view of the last several years of his employment at Becton Dickinson. For his 2010 annual performance review, Defendant gave Plaintiff an overall review rating of 2 out of 5, which the company's evaluation system classifies as "Met Some Expectations." Mr. Schuchard, noted on the performance review that Plaintiff did not meet his sales budget for the year and stressed the need for Plaintiff to achieve 100% of the company's budget expectations for the following fiscal year.

In 2011, Plaintiff again did not meet his sales budget. He ranked 16 out of 24 of the specialists doing sales of a particular product, and the company again gave him a 2 out of 5 on his annual review.

In May 2012, Plaintiff applied, with Mr. Schuchard's recommendation, to a marketing position with Defendant that would have required him to relocate to Utah. The day before Plaintiff was scheduled to interview, after he had flown to Utah with his wife to see the area, he withdrew his name from consideration for the position, having concluded that he did not want to move his family because his daughter was about to enter her senior year of high school. After Plaintiff called Mr. Schuchard to tell him he had withdrawn his name from consideration for the position, Plaintiff felt Mr. Schuchard's demeanor toward him changed, becoming distant and critical. Prior to this point, Plaintiff felt that he had a good working relationship with Mr. Schuchard. Mr. Schuchard admits that

returned to the company, Regional Manager Robert Schuchard became his direct supervisor. Defendant gave him responsibility for doing regional training and made him a key account representative, tasked with looking after larger accounts in the region. From Plaintiff's perspective, he was successful at his job, and Defendant moved him into positions of increasing responsibility and specialization.

Defendant has a different view of the last several years of his employment at Becton Dickinson. For his 2010 annual performance review, Defendant gave Plaintiff an overall review rating of 2 out of 5, which the company's evaluation system classifies as "Met Some Expectations." Mr. Schuchard, noted on the performance review that Plaintiff did not meet his sales budget for the year and stressed the need for Plaintiff to achieve 100% of the company's budget expectations for the following fiscal year.

In 2011, Plaintiff again did not meet his sales budget. He ranked 16 out of 24 of the specialists doing sales of a particular product, and the company again gave him a 2 out of 5 on his annual review.

In May 2012, Plaintiff applied, with Mr. Schuchard's recommendation, to a marketing position with Defendant that would have required him to relocate to Utah. The day before Plaintiff was scheduled to interview, after he had flown to Utah with his wife to see the area, he withdrew his name from consideration for the position, having concluded that he did not want to move his family because his daughter was about to enter her senior year of high school. After Plaintiff called Mr. Schuchard to tell him he had withdrawn his name from consideration for the position, Plaintiff felt Mr. Schuchard's demeanor toward him changed, becoming distant and critical. Prior to this point, Plaintiff felt that he had a good working relationship with Mr. Schuchard. Mr. Schuchard admits that

he was frustrated by Plaintiff's decision not to participate in the interview after Mr. Schuchard had supported his application. Mr. Schuchard thought Plaintiff should have taken his family concerns into consideration prior to applying for the job and flying to visit Utah.

In 2012, Plaintiff took over the territory of another sales consultant. Plaintiff's new territory met budget that year, but Mr. Schuchard testified in deposition that the territory's positive performance was the result of sales that had been made by the previous sales representative. Furthermore, in 2012, the Defendant made no sales as part of Defendant's individual sales compensation incentive program. Once Plaintiff began managing the new territory, it almost immediately suffered a decline in sales by $1.4 million after the loss of an existing client (Vanderbilt). Plaintiff testified that Defendant told him not to try to regain the lost sales from Vanderbilt because Defendant had acquired a company with its own account specialists that Defendant wanted to have handle the Vanderbilt account. Despite having been told to let other representatives handle the Vanderbilt account, Plaintiff was able to regain $900,000 of the business at Vanderbilt that had been lost. Plaintiff complains that Defendant did not count this amount as a gain because the account had not been gone for six months.

At the end of 2012, Defendant once again gave Plaintiff an overall performance rating of 2 out of 5. Mr. Schuchard wrote in the performance evaluation that Plaintiff's number one priority for 2013 needed to be to exceed his budget expectations. Mr. Schuchard established four specific sales-related goals for Plaintiff for 2013.

In May, 2013, Mr. Schuchard conducted a mid-year review of Plaintiff, which the Company had not previously done. The review indicated that Plaintiff was not on track to meet the budget expectations or any of the company's sales promotion incentives. Mr. Schuchard reminded Plaintiff

of his 2012 performance review which emphasized the importance of meeting sales expectations in 2013, and asked Plaintiff to prepare a business plan to meet the sales objectives. Mr. Schuchard told Plaintiff that they would meet again in July 2013 to review Plaintiff's progress. Plaintiff feels this evaluation was not fair because the sales figures did not reflect several sales he was working on that were not completed yet.

On July 22, 2013, Mr. Schuchard met with Plaintiff for another performance review and put him on an informal 90-day Performance Improvement Plan. Prior to this meeting, Plaintiff called Human Resources Manager Camille Cafferty to report that he felt that Mr. Schuchard was "harassing" him because of his age. Chapuis Dep. 193:24–194:9. Ms. Cafferty invited Plaintiff to call her after the meeting. Accordingly, Plaintiff called Ms. Cafferty the day after the meeting and told her about the performance plan. Ms. Cafferty advised plaintiff that if he completed everything on the plan, it would come to an end. Plaintiff and Mr. Schuchard subsequently met each month to discuss Plaintiff's performance under the plan.

Plaintiff believes it was unnecessary for Mr. Schuchard to put him on a Performance Improvement Plan, feels that the expectations in plan were not realistic, and felt that Mr. Schuchard did not give him the support he needed to meet the expectations. For example, some businesses had agreed to switch to Defendant's product if they were given a certain price, and Mr. Schuchard would not approve the requested prices. Plaintiff also disagrees with the requirement that he make three sales calls per day, arguing that setting an amount of activity does not necessarily yield the resulted sales. Plaintiff also complains that Mr. Schuchard had promised to give him some coaching and support in the field, but was unable to do so because he did not have the proper credentials to accompany Plaintiff on sales calls inside hospitals.

4

After an unsuccessful meeting with a prospective client, Mr. Schuchard asked Plaintiff if he wanted to do something other than sales for the company. Plaintiff responded that he wanted to move into marketing or work overseas. Mr. Schuchard commented, "Well, you're more like them anyway," which Plaintiff interpreted to mean that Mr. Schuchard did not believe Plaintiff was a revenue generator like other members of the company's sales force. Docket No. 29-1 (Chapuis Dep. 141:2–17). Mr. Schuchard also said, "The Company cannot afford to pay someone like you your salary if you don't perform." Docket No. 29-1 at 90, ¶ 14.5. Plaintiff interpreted this to be a reference to his age and tenure, because people in his age group and with his tenure typically earn higher salaries. Chapuis Dep. 138:14–17. Mr. Schuchard complained to Plaintiff that he felt Plaintiff was not working and was not engaged, which Plaintiff felt was untrue.

On October 11, 2013, at the conclusion of the 90-day period, Mr. Schuchard met with Plaintiff to advise him, by hand-delivered letter, that he had failed to achieve his sales goals from the 90-day performance plan and that he was being placed on a 60-day formal Performance Improvement Plan. The letter stated that if Plaintiff did not make significant progress during the next 60 days, the plan would end and Defendant would terminate Plaintiff's employment.

At the end of fiscal year 2013, Plaintiff was $1.5 million under budget for his territory, which ranked the worst out of Defendant's 93 territories nationwide in terms of the percentage of actual sales compared to the territory budget. In fact, for fiscal year 2013, Plaintiff's territory ranked worse than a territory that had no assigned sales representative. Because Plaintiff had not completed the criteria outlined in the formal Performance Improvement Plan at the end of the 60-day period and had not met budget expectations, Mr. Schuchard decided, in consultation with Ms. Cafferty and Mr. Schuchard's immediate supervisor, to terminate Plaintiff's employment. Mr. Schuchard and his

supervisor met with Plaintiff on December 12, 2013 and informed him of the decision to terminate his employment. Defendant gave Plaintiff a two-month transition period during which he remained employed and was given the opportunity to apply to non-sales positions within the company and to look for outside positions. At the end of February 2014, at the end of the two-month transition period, Plaintiff had not been selected for another position within the company, and his employment with Defendant ended.

On January 14, 2015, Plaintiff filed the Complaint in this matter. Defendant has moved for summary judgment, asserting that it is entitled to judgment as a matter of law in its favor on Plaintiff's ADEA discrimination and retaliation claims.

## II. STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A motion for summary judgment requires that the Court view the "'inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The opponent, however, has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "The mere existence of a scintilla of evidence in support of plaintiff's position[, however,] will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the

nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249–52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247–49).

### III. LEGAL ANALYSIS

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish a *prima facie* claim of employment discrimination under the ADEA based upon direct or indirect, circumstantial evidence. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citation and internal quotation marks omitted). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* However, regardless of the type of evidence presented, the burden of persuasion remains on ADEA plaintiffs to demonstrate "that age was the 'but-for' cause of their employer's adverse action." *Provenzano.*, 663 F.3d at 811 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

Where only indirect evidence of discrimination is available, the claims are analyzed using the three-step framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and modified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Ercegovich v.*

*Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir.1998). First, the employee carries the initial burden of establishing a *prima facie* case of age discrimination. If the employee meets this burden by presenting facts which, if true, would prove each of the elements of the *prima facie* case, the second step requires the employer to respond by articulating some legitimate, nondiscriminatory reason for the adverse employment action at issue. *McDonnell Douglas*, 411 U.S. at 802. Third, assuming the employer meets its burden, then the burden of production shifts back to the employee to rebut this proffered reason by proving that it was pretext designed to mask discrimination. *Id.* at 804.

>As the Sixth Circuit has explained,

>When an employer offers nondiscriminatory reasons for an adverse employment action, the burden shifts back to the employee to prove that the stated reason for her termination is pretextual. At this stage, the plaintiff has the burden to produce sufficient evidence from which a jury could reasonably reject the employer's explanation of why it fired her. She can accomplish this by proving (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the employee's discharge], or (3) that they were insufficient to motivate discharge. The three-part test need not be applied rigidly. Rather, pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?

*Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (internal citations and punctuation omitted). Demonstrating pretext using the third method "ordinarily ... consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779-80 (6th Cir. 2016) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009)).

### A. Discrimination

In the first stage of the *McDonnell Douglas* analysis, Plaintiff must establish a *prima facie* case of discrimination by showing: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Blizzard*, 698 F.3d at 283 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).

Plaintiff is over 40 years of age, and as such is a member of a protected group. Plaintiff's termination clearly constituted an adverse employment action. However, Plaintiff has not demonstrated that he was qualified for the job in question. Although Plaintiff emphasizes his many successes as a sales consultant earlier in his career, criticizes his supervisor's abilities as a sales person, alleges that the supervisor made it harder for him to meet sales expectations, and argues that Mr. Schuchard had no means to assess his performance, he does not dispute that his sales were under budget several years in a row, other than a year in which he benefitted from sales generated by a previous sales representative, or that he failed to satisfy the specific objectives that were outlined in the two Performance Improvement Plans that Mr. Schuchard gave him. The record does not support a finding that Mr. Schuchard tried to sabotage Plaintiff. Although Plaintiff disagrees with his employer's assessment of his abilities, he has not shown that he was qualified for the position in question.

Furthermore, Plaintiff has not proven circumstances that would support an inference of discrimination. Plaintiff's only evidence on this issue are the few comments by Mr. Schuchard quoted above, such as, "the Company cannot afford to pay someone like you your salary if you do not perform." Plaintiff's argument that these comments demonstrate animus against him based on

9

his age, as opposed to his poor sales numbers, are based on pure speculation. "Unless he attacks the specific reasons given for a termination, a plaintiff who stresses evidence of satisfactory performance is simply challenging the wisdom of the employer's decision, which [courts] have consistently refused to review." *Koval v. Dow Jones & Co.*, 86 F. App'x 61, 68 (6th Cir. 2004) (quoting *Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 403 (7th Cir.1992). No reasonable jury could determine, based on these facts, that age was a motivating factor in Defendant's decision to terminate his employment, much less that it was the "but for" cause of his termination.

Furthermore, even if Plaintiff were able to make a *prima facie* case of discrimination, Defendant has met its burden to articulate a legitimate, nondiscriminatory reasons for the adverse employment action at issue. *McDonnell Douglas*, 411 U.S. at 802. Plaintiff has not met his burden of production to rebut this proffered reason by proving that it was pretext designed to mask discrimination. *Id.* at 804. That is, he has not shown (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012).

As stated above, proceeding under the third theory generally requires "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779 (6th Cir. 2016) (citation omitted). Plaintiff testified in deposition that Defendant was placing other coworkers who were around his age on Performance Improvement Plans (Chapuis Dep. 166:7–18), but this evidence is hearsay, which is insufficient to defeat summary judgment. Fed. R. Civ. P. 56(c)(2). Even putting aside the problem with hearsay, Plaintiff identifies no sales employees outside of his

protected class whose performance similarly failed to meet the employer's expectations yet were not placed on Performance Improvement Plans.

In short, Plaintiff's disagreement with his employer's "honest business judgment regarding his work does not create sufficient evidence of pretext in the face of the substantial evidence that [the employer] had a reasonable basis to be dissatisfied." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001). The Court will enter judgment for Defendant on Plaintiff's discrimination claim.

### B. Retaliation Claim

The ADEA prohibits employers from retaliating against an employee for opposing or reporting age discrimination. 29 U.S.C. § 623(d). To establish a *prima facie* case of retaliation, Plaintiff must show that (1) he engaged in a protected activity, (2) the employer was aware that he had engaged in that activity, (3) the employer took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and the adverse action. *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 288 (6th Cir. 2012).

Plaintiff has failed to show that his complaint to Ms. Cafferty that Mr. Schuchard was discriminating against him on the basis of his age caused Defendant to terminate his employment. Plaintiff's performance had been deficient for several years, and he had failed to improve even with two Performance Improvement Plans. Plaintiff himself testified in his deposition that he did not think his conversation with Ms. Cafferty led to his termination. Chapuis Dep. 194:19–23. There is no proof from which a reasonable jury could conclude that his termination was in retaliation for his complaint of age discrimination. The Court will enter judgment on Plaintiff's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will enter judgment for Defendant on each of Plaintiff's claims.

An appropriate order is filed herewith.

*[signature: Todd Campbell]*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE